Opinion and Award based on the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to receive further evidence; reconsider the evidence; or to amend the Opinion and Award, except for some minor structural modifications.
* * * * * * * * * * * * * * *
This matter, which involves the admittedly compensable occupational disease claims for bilateral carpel tunnel syndrome and associated right tardy ulnar nerve palsy that have required plaintiff to undergo multiple corrective surgeries and have been the subject of multiple prior Industrial Commission Awards of temporary total and temporary partial disability benefits, was heard in part by Deputy Commissioner Shuping on 30 September 1993 in Winston-Salem. Prior to the hearing, the parties entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set out herein, and where they agreed to a number of jurisdictional and other factual stipulations, and stipulated to various medical records. By subsequent Order thereof the parties were The parties have also submitted the stipulated medical records of Dr. L. Andrew Koman along with records from the Pain Management Center.
Each of the Industrial Commission's prior awards, including the multiple ones entered after the hearing related to the additional corrective surgery plaintiff underwent are incorporated into the record as if fully set out herein.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the deputy Commission as follows:
FINDINGS OF FACT
1. Plaintiff is a 32 year-old married female with three children. Assuming her to be the high school graduate claimed — although the evidence is conflicting as to the exact grade level completed; she has not received any further formal education and was only an average or below average student as evidenced by the C's and D's she received in high school and her resulting limited reading ability requiring the MMPI she undertook as part of the evaluation at High Point's Pain Management Center to be given audibly.
Her prior work experience has included construction work framing and hanging drywall, working as a floor technician at a hospital cleaning, mopping and waxing floors and production work in factories, including Tyson Foods, which involves the type of constant repetitive hand motion and/or heavy lifting she can no longer do because of the permanent hand injuries giving rise hereto.
2. In December of 1991 plaintiff began an assembly line job sanding and welding metal boxes for defendant-employer not only requiring her to use various vibrating hand tools, but requiring constant repetitive had motion as well as heavy lifting.
3. Within five months thereafter plaintiff developed the admittedly compensable disabling bilateral carpal tunnel syndrome that has been subject of multiple prior Industrial Commission Awards herein manifested by pain, numbness and tingling in her upper extremities.
4. Initially she was treated by a local surgeon, Dr. Crowe, and he performed a right hand carpal tunnel release in August.
5. During the nine weeks, from 24 June 1992 to 26 August 1992, that she was out of work while undergoing and recovering from corrective surgery, plaintiff received $132.00 a week in gross benefits under a non-contributory short-term group disability plan defendant-employer provided for its employees, which were not then due and payable under the Workers' Compensation Act because the instant claim had not yet been filed. When a claim for workers; compensation benefits was subsequently filed, defendant-employer did accept liability and plaintiff received compensation benefits during the nine weeks that she was out of work while undergoing bilateral carpal tunnel releases. In order to allow defendant-employer credit for the short-term disability benefits it had already paid during this same period, the parties reached an agreement whereby plaintiff only received temporary-partial disability benefits during the nine weeks she was out of work as opposed to the temporary total disability benefits she would have otherwise been entitled to were there no issue of a credit being due defendant-employer pursuant to the provisions of G.S. § 97-42. for short term disability benefits paid. Defendant-employer has not shown much less even alleged, that the same Agreement and resulting Industrial Commission Award based thereon was entered in error due to fraud, misrepresentation, undue influence, or mutual mistake of fact; therefore, the parties are bound by the provisions thereof, including as part thereof, the extent of defendant-employer's credit pursuant to the provisions of G.S. § 97-42 and it is not entitled to a further credit under the circumstances.
6. After returning to work for defendant-employer on 26 August 1992 plaintiff resumed working on the premises assembly line not only resulting in a recurrence and worsening of her bilateral carpal tunnel syndrome as well as her developing right-sided tardy ulnar nerve palsy requiring her to undergo corrective right elbow surgery on 10 May 1993; but on the last mentioned date became totally disabled by the same conditions and the Industrial Commission entered a subsequent Award compensating her for her resulting temporary total disability after 10 May 1993. In the interim when plaintiff's symptoms worsened she came under the care of Dr. Gary Kuzma, a Greensboro orthopedic surgeon, who allowed her to continue working so long as she did not use vibrating handtools and she did so until undergoing corrective elbow surgery on 10 May 1993.
7. Although having neither then reached maximum medical improvement and/or the end of the healing period from and following the disabling occupational disease giving rise hereto and multiple corrective surgeries necessitated thereby, nor was she then able to return to her regular assembly line job or any other work similarly requiring constant repetitive hand motion, operating vibrating handtools or heavy lifting; by late July of 1993 plaintiff had sufficiently recovered so as to be able to perform light duty work not requiring these prohibited physical activities and defendant-employer was able to provide her with suitable light duty work in the form of a non-production job making boxes.
8. It was not uncommon for defendant's employees to joke or kid around with one another at work. At the time in question plaintiff and a fellow employee, Vicky, were similarly joking and kidding around with one another while they were working. In the course of doing so plaintiff told Vicky to "kiss her butt" and Vicky in turn told plaintiff to "bare it", which she did and on the same day was terminated from defendant's employ for "gross misconduct" due to the above described behavior and its effect on employee Sue Childress.
9. Whether plaintiff's action were "gross misconduct" justifying defendant-employer's termination of her is an employment law question outside the Industrial Commission's jurisdiction. The Issue before the Commission is whether plaintiff's conduct was tantamount to a refusal to accept suitable employment justifying suspension of her compensation benefits. For the following reasons it was not:
 In the first place, plaintiff's conduct had absolutely nothing to do with the performance of light duty job boxing required by the occupational disease giving rise hereto. Plaintiff had been doing the same job for three weeks and there is no evidence that she had not been doing the job adequately nor would she have continued to had she not been terminated.
 In the second place, plaintiff's conduct was nothing more than horseplay involving the type of joking and kidding around that went on all the time between the premise's employees.
 In the third place, plaintiff's conduct was neither intended to adversely affect the performance of her boxing job or any of the work of the other employees on the line nor did it do so. Only several seconds were required to "drop trou", which did not involve any substantial delay in the performance of her work and she subsequently returned to her boxing job after doing so. The other two employees present were able to continue working. Sue Childress was not embarrassed by plaintiff's conduct nor likely saw something she had not seen before and it can be reasonably inferred that Vicky, whose challenge plaintiff answered, but did not appear at the hearing, was not embarrassed by what she saw.
This is not a case where plaintiff's conduct was designed to sabotage defendant-employer's efforts to provide her with suitable lighter work by either failing to make reasonable effort to perform the work or by disrupting the premises other employees in their work.
10. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following the disabling occupational disease giving rise hereto on or about 13 July 1994, at which time she retained ten and twenty percent permanent-partial disabilities respectively of the left and right hands as a result of the same disease.
11. As a result of her permanent hand injuries plaintiff remains unable to return to her regular assembly line job for defendant-employer or any of the type of repetitive and motion, use of vibrating tools and/or heavy lifting she is no longer capable of; but rather, is only able to engage in light duty work not requiring constant repetitive hand motion, use of vibrating tools and or lifting in excess of ten pounds.
12. Defendant-employer had not offered to provide plaintiff with the type of suitable light work required by her permanent hand injuries nor is there any evidence that the same type of work is currently available for someone of plaintiff's age, education, background and work experience having the physical limitations she does, much less that she can obtain it in an open and competitive market.
13. After she was terminated from defendant's employ on 9 August 1993 plaintiff made a reasonable, but unsuccessful attempt to obtain suitable alternate light work. Because of her continuing problems plaintiff subsequently came under the care of Dr. L. Andrew Koman, who initially attempted further conservative treatment; when she did not improve, on 8 February 1994, he performed another right carpel tunnel release at which time and without prejudice to the issue of her entitlement of disability benefits during the period between 9 August 1993 and 8 February 1994 defendant-employer began paying compensation benefits for plaintiff's resulting total disability by entering the first of several Industrial Commission Awards for specific periods of disability, pursuant to the last of which plaintiff received compensation benefits for one and one-seventh (1 1/7th) weeks commencing as of 5 July 1994 resulting in her being paid up until the date she reached maximum medical improvement from her occupational disease.
If defendant-employer desires to engage the services of vocational rehabilitation specialist to assist her in obtaining suitable employment or to assist her in obtaining retraining if she is a candidate for it, plaintiff is obligated to cooperate in any reasonable vocational rehabilitation efforts or have her compensation benefits suspended until she does.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. For the reasons stated in the above Findings of Fact, plaintiff's conduct did not amount to a constructive refusal to accept suitable light work justifying defendant's termination of her weekly benefits on 9 August 1993; therefore, plaintiff is entitled to continuing weekly compensation benefits at a rate of $161.10 per week during the period from 24 June 1992 to 26 August 1992. G.S. § 97-32.
2. For the reasons state in the above Findings of Fact defendant-employer is not entitled to a further credit for the short term disability benefits paid to plaintiff during the period from 24 June 1992 to 26 August 1992. G.S. § 97-17; G.S. § 97-42.
3. As a result of the ten and twenty percent permanent partial disabilities of the left and right hands respectively that she retains from the admittedly compensable occupational disease giving rise hereto, plaintiff has remained totally disabled since 13 July 1994 when she reached maximum medical improvement and/or the end of the healing period from her occupational disease entitling her to compensation at a rate of $161.60 per week from 13 July 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains so disabled.
* * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the deputy commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff on account of her continuing total disability, compensation at a rate of $161.60 per week during the period from 9 August 1993 to the scheduled date of the initial hearing before Deputy Commissioner Shuping on 30 September 1993, and thereafter continuing at the same rate so long as she remains totally disabled, subject to a credit for the compensation benefits that defendant-employer paid during the period from 8 February 1994 to 13 July 1994 based on the multiple Settlement Agreements entered and to a reasonable attorney fee for plaintiff's counsel.
2. At this time a reasonable attorney fee in the amount of twenty-five percent of the accrued compensation benefits due is hereby approved for plaintiff's counsel. For the balance of his fee defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto according to establish Industrial Commission procedures.
4. Defendant shall bear the costs, including as part thereof the $325.00 expert witness fee previously awarded Dr. L. Andrew Koman for his deposition testimony to the extent the same has not already been paid.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER